Albert Einstein Medical Center, Northern Division, Appellant *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board and Pennsylvania Nurses Association, Appellees. (2 Cases)

614

Submitted on briefs, April 5, 1977, to President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*William A. Whiteside, Jr.,* with him *Howard R. Flaxman,* and *Nathan L. Posner,* for appellant.

*Forest N. Myers,* Assistant Attorney General, with him *James L. Crawford,* Assistant Attorney General, for appellees.

OPINION BY JUDGE BLATT, June 17, 1977:

The Albert Einstein Medical Center (Einstein) appeals from two orders of the Court of Common Pleas of Philadelphia County which affirmed the Pennsylvania Labor Relations Board's (Board) certifications of the Pennsylvania Nurses Association (PNA) as representative of two groups of Einstein employes.

After the necessary election had been held and oral argument had been heard concerning the appropriateness of the units, the Board issued two final orders: (1) certifying PNA as the exclusive collective bargaining representative for approximately 500 full-time and regular part-time registered and licensed practical nurses, including assistant head nurses, public health coordinators, home care nurse coordinators, and in-service instruction coordinators; and (2) certifying PNA as the exclusive representative of a "meet and discuss" unit of approximately 25 head nurses. The lower court dismissed Einstein's appeal from these certifications and this appeal followed.

Our scope of review here is limited to a determination of whether or not the findings of the Board are supported by substantial and legally credible evidence and whether or not its conclusions are reasonable and not capricious, arbitrary or illegal. *Western Psychiatric Institute and Clinic v. Pennsylvania Labor Relations Board,* 16 Pa. Commonwealth Ct. 204, 330 A.2d 257 (1974). Section 604 of the Public Employe Rela-

tions Act[1] (Act), 43 P.S. §1101.604, delegates to the Board the duty of determining the appropriateness of a unit:

The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:

(1) Take into consideration but shall not be limited to the following: (i) public employes must have an identifiable community of interest, and (ii) the effects of over-fragmentization.

Einstein first asserts that the two units certified here will lead to over-fragmentization of personnel and that, because hospital employes function as a "team," the appropriate unit would be one which includes all employes, not just nurses. This Court has held previously that the team approach to patient care does not automatically establish an identifiable community of interest for collective bargaining purposes and, further, that the certification of several units would not necessarily be detrimental to the efficient operation of the team. *Western Psychiatric Institute, supra.* Einstein has itself established a separate Nursing Service Department with a unique supervisory structure which includes only registered and licensed practical nurses. Moreover, the record contains evidence to substantiate the Board's conclusion that registered and licensed practical nurses perform sufficiently similar duties to establish a single community of interest. We recognize the difficulty in establishing units which represent an identifiable community of interest without over-fragmenting an integrated medical team, and we must permit the Board, with its greater experience and expertise, to weigh the facts relevant to the

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 et seq.

appropriateness of a unit unless the Board does so in an arbitrary, capricious, or unreasonable manner. *Western Psychiatric Institute, supra.* Our review of the record here reveals that the Board has made a reasonble decision supported by substantial, credible evidence, and we will not disturb it.

Einstein's second argument is that certain members of the certified units have no right to representation under the Act because they are either management level employes or supervisors. Section 301(16) of the Act, 43 P.S. §1101.301(16), defines "management level employe" to mean "any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision." Section 301(6) describes a "supervisor" as

any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

The Act permits supervisors to belong only to a "meet and discuss" unit and prohibits management level employes from being represented for collective bargaining purposes.

The Board found, and the record substantiates this finding, that head nurses direct the activities of assistant head nurses and lower level employes and that they may recommend discipline. The record also supports the Board's conclusion that assistant head nurses and team leaders may, because of longer experience or greater training, direct work by making medical

judgments but that they do not exercise the authority of a supervisor in recommending discipline or other changes in status for lower level employes. Furthermore, the Board rejected Einstein's argument that nurse coordinators and instructors determined or directed the implementation of hospital policy and were, therefore, management level employes. Without detailing all of the facts, the testimony simply does not support the hospital's contentions that ineligible employes were included in the units here. We believe that only head nurses possess first-level supervisory responsibilities and that they, therefore, properly comprise the "meet and discuss" unit and we believe, further, that the record here indicates that all other groups of employes challenged by Einstein were properly certified in a collective bargaining unit.

Einstein has also asked us to reverse the Board's orders on the ground that PNA is not an "employe organization" within the meaning of Section 301(3) of the Act,[2] because it admits to membership only registered nurses and prohibits licensed practical nurses from becoming members.[3] However, the clear language of the definition of "employe organization" excludes only those organizations which practice "dis-

---

[2] 43 P.S. §1101.301(3), which defines "employe organization" as an organization of any kind, or any agency or employe representation committee or plan in which membership includes public employes, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, employe-employer disputes, wages, rates of pay, hours of employment, or conditions of work but shall not include any organization which practices discrimination in membership because of race, color, creed, national origin or political affiliation.

[3] The distinction between representation and membership should be noted. The Board has certified PNA as the bargaining representative of registered and licensed practical nurses, whether or not they are dues-paying members of the PNA.

crimination in membership because of race, color, creed, national origin or political affiliation.'' Should PNA fail to equally represent all employes, the aggrieved persons may then petition the Board for decertification as provided in Section 607 of the Act, 43 P.S. §1101.607.

Finally, Einstein proposes an ingenious challenge to the representation election at which 193 employes voted for PNA, 192 persons voted for no representation, and one ballot was declared to be void. Although Einstein agrees that the contested ballot was void, it argues that it should still be counted in the total number of ballots cast because the situation is analogous to an abstention. Section 605(3), 43 P.S. §1101.605(3), is explicit that: ''A representative may not be certified unless it receives a majority of the *valid ballots cast*.'' (Emphasis added.) We agree with the Board that the ballot was void for all purposes and that PNA was properly certified on the basis of these election results.

We find no merit in Einstein's arguments, and we must, therefore, dismiss its appeal and affirm the order of the lower court.

ORDER

AND Now, this 17th day of June, 1977, the orders of the Court of Common Pleas of Philadelphia County, dismissing the appeals of the Albert Einstein Medical Center, are hereby affirmed.

CONCURRING OPINION BY JUDGE CRUMLISH, JR.:

I am in complete accord with the holding of the majority. However, I feel it necessary to again clarify my position with regard to the over-fragmentization of personnel within the hospital setting. As I stated in *Albert Einstein Medical Center v. Pennsylvania Labor Relations Board*, 17 Pa. Commonwealth Ct. 91, 330

A.2d 264 (1975), the danger of over-fragmentization includes the possibility of total disruption and eventual discontinuance of vital health services to the community, and attendant thereto the threat of stalemate and inter-unit confrontation, and must be avoided. In *Einstein, supra,* I wrote that the appropriateness of the unit composed of pharmacists, and part-time and supervisory employees within that group, should be carefully scrutinized in order to ascertain an identifiable community of interest.

Before us today is a unit proposed to compose approximately 500 full-time and regular part-time registered and licensed practical nurses, including assistant head nurses, public health coordinators, home care nurse coordinators, and in-service instruction coordinators. In my judgment, such a unit is appropriate because the community of interest common to all these nurses is readily apparent. On the basis of the foregoing, reiterating my admonishment to the Board to carefully scrutinize to avoid over-fragmentization, I concur.